UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| Plaintiff, | ) Case No: 3:12-cv-00336-UAMH-JBT |
| v. | ) |
| JOHN DOES 1-18, | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE IN FURTHER
SUPPORT OF STATEMENTS MADE DURING HEARING**

By and through undersigned counsel, Plaintiff respectfully submits this written response in further support of the statements undersigned made to this Court during the hearing held on August 20, 2012 (the "Hearing").

**I.   Introduction**

At the Hearing, your Honor requested undersigned explain why Plaintiffs voluntarily dismissed John Doe Defendants 2-6 and 8, without prejudice, in Case No. 3:12-cv-00334-TJC-JBT, and John Doe Defendants 1-7, 9, and 12-18, without prejudice, in Case No. 3:12-cv-00336-UAMH-JBT.  Your Honor expressed particular concern that Plaintiffs may be using the Doe Defendants' identities for a purpose other than to enforce Plaintiffs' copyrights, which is the only purpose for which Plaintiff is permitted to use the Doe Defendants' identities, see this Court's order dated April 18, 2012, CM/ECF 10.  Undersigned appreciates this opportunity to explain Plaintiffs' actions and understands that voluntarily dismissing defendants without prejudice is not the normal course of action for plaintiffs in traditional cases.

1

As explained below, however, BitTorrent copyright infringement litigations have several unusual characteristics which undersigned deemed warranted the dismissal of the Doe Defendants with prejudice. First, Plaintiffs filed the subject BitTorrent copyright infringement actions against unknown Doe Defendants. Consequently, Plaintiffs had no time to investigate and discuss the dispute with the Doe Defendants prior to initiating the lawsuit. Second, there is a tension between the requirements of Rule 11 and Rule 4(m) that makes voluntarily dismissing a case for the purpose of allowing Plaintiffs to conduct a more thorough investigation prudent, if not, (in the eyes of some judges) necessary.

Significantly, the decisions emanating from the Middle District of Florida in similar cases, to date, have been among the most fair minded of any decisions that have been issued in cases like this across the country. As the Court and Plaintiffs' counsel continue to grapple with unusual circumstances presented by BitTorrent copyright litigations, undersigned and Plaintiffs pray that Courts will settle on a process that is fair and just for all concerned. Toward that end, this Court has undersigned's commitment.

## II. General Factual and Legal Background

### A. Online Piracy is a Huge Problem

Online infringement is a major problem in the United States. As explained in a report by the International Federation of the Phonographic Industry ("IFPI") entitled "Music how, when, and where you want it" online piracy has devastated the music industry, and is threatening to devastate the movie, software and publishing industries. See Exhibit A. Indeed, seven million copies of the movie "The Dark Knight" were distributed illegally through BitTorrent. Id. at 21. Significantly, undersigned anticipates filing suit in the next two weeks for infringement of the copyright covering a widely acclaimed mainstream movie that was infringed over 100,000 times

in the first weekend of its release. Adult entertainment studios are particularly susceptible to online piracy because the internet is the dominant channel of distribution for these companies. As a result of the piracy, undersigned's clients have informed undersigned that 60% of adult studios have (in the last six years that BitTorrent has become popular) gone out of business – despite statistical evidence that more people than ever are watching their movies.

### B. The U.S. Government Tries to Deter Infringement and To Make Identifying Infringers Easy

The U.S. Government anticipated that on-line infringement would become a major problem. Consequently, the U.S. Government passed the Digital Theft Deterrence and Copyright Damages Improvement Act of 1999, Pub. L. No. 106-160, 113 Stat. 1774, wherein Congress specifically increased the amount of recoverable statutory damages under the Copyright Act for the purpose of deterring online infringement. See Sony v. Tennenbaum, 660 F.3d 487, 500 (1st Cir. 2011). The U.S. Government also passed Section 512(h) of the Digital Millennium Copyright Act ("DMCA"). Section 512(h) affords copyright owners a comparatively easy process to subpoena the identities of people whose internet was used to infringe the owner's rights. The DMCA was a compromise between internet service providers and copyright owners: to wit; in exchange for a safe harbor from claims of contributory infringement, ISPs were to provide the identities of the direct infringers to copyright owners.

### C. ISPs Reneged On Their Bargain

The major ISPs later reneged on their bargain by challenging Section 512(h)'s applicability to ISPs that merely "transmit" instead of "store" data. Notably, almost all ISPs, e.g., Time Warner, Comcast, Charter, Verizon, Cox, etc. merely transmit data. Ultimately, two circuits agreed with the ISPs by holding that Section 512(h) does not apply to ISPs that merely transmit data. See RIAA v. Verizon Internet Services, Inc., 351 F.3d 1229 (D.C. Cir. 2003); and

In re Charter Communications, Inc., Subpoena Enforcement Matter, 393 F.3d 771 (8th Cir. 2005). "The stakes [were] large for the music, motion picture and software industries. . . ." the D.C. Circuit opined, because the Section 512(h) process was so much easier than a copyright infringement Doe suit. RIAA v. Verizon at 1238; accord In re Charter at FN3 (same.)

### D. Courts Restore Balance By Allowing Doe Suits

Notwithstanding these holdings, the Eight Circuit expressly opined that "organizations such as the RIAA can file a John Doe suit, along with a motion for third-party discovery of the identity of the otherwise anonymous 'John Doe' defendant." In re Charter Communications, Inc., Subpoena Enforcement Matter, 393 F.3d 771, FN3 (8th Cir. 2005). The Eighth Circuit's confirmation that a John Doe suit is proper was the express consolation prize for copyright owners denied the right use the easy process afforded by Section 512(h). Similarly, in Arista Records, LLC. v. Doe 3, 604 F.3d 110 (2d Cir. 2010) the Second Circuit upheld the District Court's denial of a motion to quash after Arista obtained leave "to serve a subpoena on defendants' common ISP, the State University of New York at Albany." See also, Sony supra holding in a twenty-six page opinion that an individual was liable for infringement committed through a peer-to-peer network and that the statutory damages clause set forth in the Copyright Act is not unconstitutional.

### E. The Suits Are Formed With the Intention of Being Litigable

Undersigned specifically limits the number of Doe Defendants in a particular suit so that the suit can be litigated in a joined fashion through trial, if necessary. Last year, when undersigned first filed a BitTorrent copyright infringement case, undersigned thought it would be possible to complete a pre-suit investigation, and to thereafter name and serve Doe Defendants into the original suits as formed. While this remains an aspiration, and undersigned continues to

form suits designed to be litigated, for the reasons set forth below, undersigned came to the conclusion that it is not often possible to do the pre-suit work in the time limits imposed by Rule 4(m). Indeed, through heuristics undersigned learned that the better course of action was to file a joined suit, dismiss the Doe Defendants voluntarily without prejudice; and then, if necessary, re-sue the Doe Defendants in a subsequent suit.

Subsequent to being voluntarily dismissed without prejudice, undersigned's clients investigate their claims against the Doe defendants. Following Plaintiffs' investigations in prior suits, Plaintiffs have brought scores of round two suits against Defendants with whom they could not reach an amicable resolution. Plaintiffs' evidence against <u>each</u> Doe Defendant, and the viability of a round two suit against <u>each</u> Doe Defendant is analyzed toward this end. Further, the statute of limitations has not run on any claim Plaintiffs have identified through this process, and Plaintiffs anticipate filing many more round two suits. Ultimately, Plaintiffs remain committed to bringing the infringers to justice by suing those people who Plaintiffs believe are liable and refuse resolve the dispute without the necessity of court invention.

**F. <u>Summary of Reasons for Dismissing the Doe Defendants Without Prejudice</u>**

Here, Plaintiffs' decision to dismiss the subject Doe Defendants, without prejudice, was based on the following litigation realities: (1) at the time Plaintiffs filed the subject complaints, Plaintiffs did not know the identities of the Doe Defendants, and the 120 days afforded under Rule 4(m) to serve defendants is insufficient for Plaintiffs to do their work; (2) Rule 11 requires that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;" (3) the dismiss and re-sue process is more equitable to the Doe Defendants, and it is more

efficient and less expensive for all concerned; and (4) undersigned believes that courts generally do not like to have cases linger during substantial periods of apparent inactivity.

1. **The Time Allowed Under Rule 4(m) Is Not Sufficient**

Following the receipt of the Doe Defendants' identities from their respective ISPs, Plaintiffs seek to ascertain from the Doe Defendants whether they have any exculpatory evidence, and also seek to ascertain what their intentions are with regard to the parties' dispute. This process takes time – often several months. To explain, while many Doe Defendants simply call undersigned and say *mea culpa*, you caught me, and settle for a reasonable amount -- many Doe Defendants do not, and in these situations Plaintiff engages in a substantial amount of informal discovery with these Doe Defendants. Indeed, it is normal for these Defendants to send Plaintiffs additional information which bears on their culpability or their ability to pay a settlement. And, it is normal for Plaintiffs to independently investigate these Defendants' claims. As a result of these communications, ultimately, many Doe Defendants settle their dispute with Plaintiffs or Plaintiffs chooses not to pursue its claims. This winnowing process is not unlike what happens in the overwhelming majority of pre-suit disputes between parties. The only difference here is that in the normal course, courts never get involved because the parties know each other's identities prior to filing an action.

In the context of BitTorrent copyright infringement litigation, Plaintiffs simply do not have sufficient time to go through a normal presuit process prior to the expiration of the Rule 4(m) deadline. Indeed, it takes at least sixty (60) days, usually around ninety (90) days, and

6

often more than one hundred and twenty days (120) days from the date of the filing of the Complaint to obtain the identities of the Doe Defendants.[1]

### a. Courts Take Different Views as to the Propriety of Enlarging the Service Deadline Under Rule 4(m)

By the time Plaintiffs actually obtain the Doe Defendants' identities, the 120 days permitted under Rule 4(m) to effectuate service is frequently about to expire – if it has not done so already. And, while Plaintiff is aware that Rule 4(m) states that Courts *shall* enlarge the time within which to serve a defendant upon a showing of "good cause," not all judges deem that Plaintiffs' desire to talk to the Doe Defendants prior to serving them constitutes "good cause." See Patrick Collins v. John Does 1-6, Case No. 1:11-cv-20912 (S.D. Fla. 2011), CM/ECF 11 (dismissing case without prejudice despite Plaintiff timely filing a motion to extend the Rule 4(m) deadline and despite Plaintiff not having received some of the Doe Defendants' identities); Raw Films v. John Does 1-36, Case No. 2:11-cv-01603 (D. Arz. 2011) (denying Plaintiff's motion to extend the Rule 4 (m) deadline which was based on Plaintiff's need to complete its "investigatory process,") see CM/ECF 14&15; Nucorp v. John Does 1-9, 5:12:-cv-02086 (E.D. PA. 2012) (denying Plaintiff's motion to extend because Plaintiff did not file a motion for sanctions under Rule 45(e), despite the ISP telling Plaintiff that it would comply but simply needed more time); Patrick Collins, Inc. v. John Does 34-51, 3:11-cv-02143 (S.D. Ca. 2012) (denying Plaintiff's request for an extension and noting that the Court had told Plaintiff that "requests for extensions were discouraged.")

---

[1] The length of time it takes is dependent on: (1) how quickly the Court enters the order granting Plaintiff leave to subpoena the identities of the Doe Defendants, and (2) the process used by the particularly ISP. As for the ISPs' processes, most of them take between 30-60 days to perform the lookup. Thereafter, some ISPs give the Doe Defendants twenty days (20) notice, while other ISPs give the Doe Defendants thirty days (30) notice. Finally, some ISPs do not provide the Doe Defendants' identities if there are any pending motions to quash, and very few of the ISPs provide the identity of the movant during the pendency of said movant's motion.

Admittedly, the foregoing cases represent a minority of instances wherein the judges refused to grant what Plaintiffs deemed to be reasonable extensions. Nevertheless, these decisions and others like them color undersigned's view that many Courts are not particularly keen on giving extensions for the purpose of allowing Plaintiffs to complete reasonable presuit investigations and discuss settlements with defendants.

### 2. Rule 11 Requires Plaintiffs Perform a Reasonable Factual Investigation

Judge Porcelli at an oral argument attended by undersigned in a similar case, and Judge Wilson in <u>Malibu Media, LLC v. John Does 1-18</u>, Case No. 8:12-cv-01419, at CM/ECF # 14, expressly in an order, warned undersigned about the necessity of complying with Rule 11 when naming John Doe Defendants. Here, it bears noting that at the inception of a John Doe BitTorrent suit there can be no question that Plaintiff has complied with its Rule 11 obligations. Indeed, the John Doe Defendant (a/k/a the subscriber) is not only the most likely infringer, the John Doe Defendant is the only entity capable of being identified that will have any information relevant to the infringement. Since it is clear that the United States government intended to make online infringement actionable, the government must have envisioned and intended to allow this process.[2] *Arguably*, however, if a Plaintiff is permitted to do so, in order for a Plaintiff to comply with Rule 11, a Plaintiff must evaluate any exculpatory evidence proffered by a defendant prior to naming and serving said defendant. Significantly, Plaintiff does evaluate exculpatory evidence. As may be expected, the process of soliciting and exchanging information between the parties takes time.

---

[2] The situation is similar to when a car runs a red light under a camera and the government sends the registered owner a ticket. That ticket is based on the assumption that the registered owner is the driver. Here, Plaintiff's assumption is that the subscriber is the user and infringer. Both parties may defend on the basis of saying that he, she or it lent its car or internet to a third party or that a third party stole the car or internet.

### 3. Courts Struggle With The Equities In BitTorrent Litigation; The Middle District Has Entered Fair and Reasonable Rulings

It is no secret that many courts have struggled with the equities in BitTorrent copyright infringement cases. This is particularly true where the copyright covers an adult work.[3] With all due respect to them, some judges have engaged in what undersigned describes as judicial nullification of the Copyright Act by taking Herculean efforts to find that same swarm infringement is not "logically related" for purposes of permissive joinder under Rule 20(a). Indeed, some judges have wholesale made up rules the only apparent purpose of which is to deny Plaintiffs the right to pursue infringers.

Significantly, the judges in the Middle District of Florida have followed the law while simultaneously crafting very sophisticated processes to balance the equities. See <u>Malibu Media, LLC v. John Does 1-9</u>, 8:12-cv-669-T-23AEP (M.D. Fla. July 6, 2012) (Exhibit A) (setting forth requirements for Plaintiff to notify John Doe defendants of their rights, providing an outlet for John Doe defendants to request Plaintiff cease contact, and creating a notification process before any defendants are named and served); <u>Malibu Media v. John Does 1-18</u>, 8:12-cv-01419-EAK-TGW (M.D. Fla. August 20, 2012) (Exhibit B) (setting forth the same requirements as above and additionally requiring Plaintiff notify the John Doe defendants of its Rule 11 requirement and enabling the John Doe defendants to identify the infringer or provide exculpatory evidence if he or she did not commit the infringement); <u>K-Beech Inc., v. John Does 1-57</u>, Case 2:11-cv-00358-CEH-SPC (M.D. Fla. 2011) (discussing the standard for joinder and holding joinder is proper);

---

[3] As the Honorable Porcelli held, "[t]he Court doubts that the John Doe Defendants' concerns would be as heightened and given as much attention by other courts if the alleged protected material was copyright music rather than pornography." <u>Malibu Media, LLC v. John Does 1-9</u>, 8:12-cv-669-T-23AEP, *7 (M.D. Fla. July 6, 2012) (Exhibit A). "Essentially the John Doe Defendants are requesting the Court create a special exception under the Copyright Act for cases such as this in which the copyrighted material contains pornography. The Court is simply not inclined to take such an inappropriate action." <u>Id.</u>

Case 3:12-cv-00336-UAMH-JBT Document 36 Filed 08/27/12 Page 10 of 12 PageID 279

Nu Image, Inc. v. Does 1-3,932, 2:11-CV-545-FTM-29, 2012 WL 646070 (M.D. Fla. Feb. 28, 2012) (same); Malibu Media, LLC, v. John Does 1-13, 2:12-cv-177-JES-SPC (M.D. Fla. July 26, 2012) (setting forth the process for filing a motion to quash in the correct court). Plaintiff agreed and stipulated to all of these reasonable processes in an effort to be fair to the defendants and assist the Court with the management of these cases.

If required, Plaintiff could immediately name and serve the Doe Defendants. Any such process, however, would deny the Doe Defendants the ability to resolve the suit prior to additional court intervention, should they desire to do so. Further, any such process would be inefficient because many of the disputes are resolved without necessity of Court intervention once Plaintiff obtains the Defendants' identities. Thus, a process requiring plaintiffs to sue and serve would needlessly waste judicial and litigant resources.

### G. **Voluntary Dismissals Are Legal and Proper**

Under Fed. R. Civ. P. 41, a "plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." There is no limitation in the rule based on the motivation of a party. Accordingly, Plaintiff's notices of voluntary dismissal were expressly allowed by the Rule. Judge Howell in an opinion the review of which she certified to the D.C. Circuit, held that it is proper to use a Doe suit to identify Doe Defendants who reside outside of the D.C. District and for Plaintiff to dismiss the Defendants after Plaintiff learns their identities.

> At this stage, the plaintiff is attempting to identify those infringing its copyright so that it may investigate the feasibility of proceeding in lawsuits against them. That the plaintiff chooses, after obtaining identifying information, to pursue settlement or to drop its claims altogether is of no consequence to the Court. The plaintiff has sufficiently pled allegations of copyright infringement and has a right to name or decline to assert claims against defendants whose identities and other relevant circumstances become known to the plaintiff. *See Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 91 (2005) ("In general, the plaintiff is the master of the

10

complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties.") (quoting 16 Moore's Federal Practice § 107.14 [2][c], p. 107–67 (3d ed.2005)).

AF Holdings LLC v. Does 1-1,058, CIV.A. 12-0048 BAH, 2012 WL 3204917, *14 (D.D.C. Aug. 6, 2012). Further, in response to an argument that AF Holdings typically dismisses everyone, Judge Howell held "[u]pon receipt of the identifying information sought in the subpoenas, the plaintiff is entitled to seek settlement with these individuals, or decide that pursuing a lawsuit against particular defendants is no longer feasible or cost-effective. Either course selected by the plaintiff would give the copyright owner the opportunity to effectuate its statutorily protected rights and thereby serves our system of justice." Id. at * 17.

### H. **Plaintiffs Only Use the Doe Defendants' Identities To Enforce Their Copyrights**

At the hearing, the Court expressed concern that Plaintiffs may be using the Doe Defendants' identities for a purpose other than to enforce its copyrights. This is simply not true. Plaintiffs only use the Doe Defendants' identities for the purpose of investigating and resolving or litigating its claims. Each of the foregoing actions is aimed at enforcing Plaintiffs' copyrights.

### I. **Should the Court Advise Undersigned That the Court Would Prefer to Have The Matter Resolved In One Litigation, Plaintiffs Will Oblige**

Plaintiffs merely seek a system that allows them to litigate these matters in an equitable and efficient manner. Toward that end, in future cases, Plaintiffs would be amenable to changing its strategy. In order to do so, this Court could signal that it would give Plaintiffs sufficient time to complete their investigations by entering a preliminary order enlarging the time within which Plaintiffs have to complete service. Three months following the date upon which Plaintiffs receive the identity of the Doe Defendants would be sufficient. In any future case assigned to your Honor, at the beginning of the case, undersigned will file a motion requesting such relief.

### III.     Conclusion

Plaintiffs' voluntary dismissals were permitted and the bases therefore are rational. While the process may be unusual, Plaintiffs merely seek a process that is fair and efficient. Toward that end, Plaintiffs are flexible, reasonable, and will work cooperatively with the Court in developing processes that are fair, reasonable, efficient, and work for all concerned.

Dated: August 27, 2012

> Respectfully submitted,
>
> By: /s/ *M. Keith Lipscomb*
> M. Keith Lipscomb (429554)
> klipscomb@lebfirm.com
> LIPSCOMB, EISENBERG & BAKER, PL
> 2 South Biscayne Blvd.
> Penthouse 3800
> Miami, FL 33131
> Telephone: (786) 431-2228
> Facsimile:  (786) 431-2229
> *Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> By: /s/ *M. Keith Lipscomb*

### SERVICE LIST

U.S. District Court
Middle District of Florida
Civil Case No. 3:12-cv-00336-UAMH-JBT

1. Plaintiff does not yet have Defendants' names or addresses.